### TUSCARORA CLUB OF MILLBROOK v. BROWN.

(Supreme Court, Appellate Division, Third Department. December 30, 1912.)

1. VENDOR AND PURCHASER (§ 230*)—BONA FIDE PURCHASER—NOTICE.

An owner of premises through which a stream flowed conveyed them to his mother to secure obligations to her. After payment of the obligations, she, under his directions, conveyed the premises by deed which reserved to him the right to fish in the stream. A remote grantee claiming under the deed gave a mortgage which described the premises and for a more particular description referred to deeds containing the reservation. *Held* that, whether the clause in the deeds was an exception or a reservation, a purchaser from one acquiring title under a foreclosure by deed referring to the deeds in the chain of title for a description was chargeable with notice of the fishing rights of the owner.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–512; Dec. Dig. § 230.*]

2. NOTICE (§ 6*)—CONSTRUCTIVE NOTICE.

Where one is put on inquiry, he is chargeable with the knowledge which he reasonably would have obtained on inquiry.

[Ed. Note.—For other cases, see Notice, Cent. Dig. §§ 4–7; Dec. Dig. § 6.*]

3. VENDOR AND PURCHASER (§ 242*)—BONA FIDE PURCHASER—NOTICE.

Where a mother obtained from her son a conveyance of his real estate to secure the payment of his indebtedness to her, she had no title after the payment of the debt, and one claiming title through her must show that she was authorized by the son to convey or that he is a purchaser in good faith without notice, relying on the conveyance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 603–605; Dec. Dig. § 242.*]

4. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASER—NOTICE—RECORDING ACT.

The recording act is intended solely to protect a purchaser from an apparent owner against a prior deed or mortgage which has not been

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

recorded, and does not apply to a purchaser claiming title under a deed referring to deeds containing reservations in the chain of title, and he is chargeable with notice of such reservations.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 487, 513–539; Dec. Dig. § 231.*]

Appeal from Special Term, Delaware County.

Action by the Tuscarora Club of Millbrook, N. Y., against William H. Brown. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, BETTS, HOUGHTON, and LYON, JJ.

Davies, Auerbach, Cornell & Barry, of New York City (Charles W. Hotchkiss, of counsel, and Harold Harper, of New York City, on the brief), for appellant.

Andrew C. Fenton, of Margaretville, for respondent.

JOHN M. KELLOGG, J.   The court was justified in finding that: The defendant, the owner of the premises in question, through which the Millbrook stream flowed, on the 15th day of November, 1883, deeded the premises, which were described as 14 acres, to his mother, by an ordinary quitclaim deed, reciting a consideration of $24. At that time he was living with his mother, became embarrassed, and deeded this land to her, and gave her a bill of sale of all his personal property to secure obligations to her, which obligations were subsequently paid in full. February 24, 1885, after such obligations had been fully paid, she wrote him that she was offered $25 for the fishing ground, and asked if he wanted to sell it. He replied that he would not sell the fishing ground, but if they wanted the ground, and let him have the fishing, they could have it for $25, as he did not know that he would ever be back and need it, but he wanted it if he did come back, so that he could fish. If they wanted it, and would do that, he directed her to give them a deed. Pursuant to this direction the mother gave to Mrs. Carroll an ordinary quitclaim deed, which, after the description, contained the clause:

"Reserving the right to William H. Brown, Jr., to fish in said Millbrook stream."

Mrs. Carroll conveyed the premises to one Austin by an ordinary quitclaim deed, which contained the same provision. Austin, October 15, 1887, conveyed the premises to the De Silvas for an expressed consideration of $25, describing them as 3 acres, the deed containing the same reservation, and on the same day the De Silvas mortgaged the premises to Austin for $500 under a different description, describing the premises as containing 14 acres, more or less, with a clause:

"For a more particular description reference is had to a deed given by second party and wife to A. Ward De Silva and Joseph De Silva, bearing date September 14, 1887, and also to a deed given by second party and wife to A. Ward De Silva and Joseph M. De Silva, bearing date October 15, 1887; this conveyance being intended to cover the same lands, and all of them, mentioned and described in those two deeds."

July 23, 1898, the premises were conveyed by a referee in mortgage foreclosure action to one Soop; the premises being described as bounded:

"Southerly by lands of Marcus Shavar, westerly by lands of Francis O'Connor, northerly by the highway leading to the Millbrook stream, easterly by lands in possession of William H. Brown and lands of Edward Cantwell, being about 14 acres of land, be the same more or less. For a more particular description reference is had to a deed given by second party and wife to A. Ward De Silva and Joseph M. De Silva, bearing date September 14, 1887, and also to a deed given by second party and wife to A. Ward De Silva and Joseph M. De Silva, bearing date October 15, 1887; this conveyance being intended to cover the same premises, and all of them, mentioned and described in these two deeds."

Soop conveyed to the National Bank by substantially the same description, except, in referring to the deeds which formally described the property, instead of the erroneous expression, "given by the second party and wife," it named Theopolus G. Austin and wife as the grantors. April 15, 1901, the bank conveyed to the plaintiff under substantially the same description contained in its deed of the premises.

[1] The court found that the reserving clause in the deed was an exception rather than reservation, and retained to the defendant the right to fish in the stream, on the theory that the deed from the defendant's mother was a mere mortgage, which had been satisfied, and that the defendant was the owner; the mother simply holding the naked title and having conveyed it to Mrs. Carroll as his agent, and that therefore the deed left the fishing right in the defendant, just as it was prior to the Carroll deed. I do not think it material to consider whether it is a reservation or an exception. Clearly as between the defendant and his mother before the mortgage was paid, and more particularly after its payment, he had the clear right to fish in the stream. He never consented to a conveyance of that right, and it was not conveyed; the deed expressly reserving or excepting it. To fairly locate the land under the plaintiff's deed, a reference was necessary to the Austin deed, which contained this reservation. There was sufficient to put the proposed purchaser upon inquiry as to the defendant's rights. We do not know whether it made inquiry or not, or whether or not the prior grantors in the chain of title from Mrs. Brown made inquiry.

Plaintiff relies upon the acknowledgment, contained in the deed, that the consideration was paid, as its only evidence of good faith, without making any proof that it did not know of the reservation itself, and did not know of the facts and circumstances under which it was made. I think we may fairly assume that it made inquiries and ascertained the facts, but perhaps relied upon the technical rule that a reservation in a deed to a stranger was ineffectual, and therefore the defendant had no fishing rights. But we have seen that the defendant was really the grantor to Mrs. Carroll, and the recital in her deed either notified her of the defendant's rights or put her upon inquiry.

[2] Where a person is put upon inquiry, he must be charged with the knowledge which he reasonably would have obtained, had he made

inquiry; and, if such inquiry had been made, it would have appeared that the defendant owned the property, the mother holding merely the naked paper title, without any beneficial interest therein, and that she was making the conveyance for the defendant, and that therefore the reservation in the deed was in favor of the party really making the deed. If it had distinctly appeared as a matter of fact that the plaintiff never knew of this clause in the prior deeds, and never knew of any reservation of fishing rights, and paid the consideration, believing that it had an unincumbered title, the case might, perhaps, be different. In the absence of such proof I think it is fair to assume that it did know of the clause and made satisfactory inquiry with relation to it. I think, therefore, it bought subject to the defendant's fishing rights.

[3] As the defendant's mother had no title, the plaintiff cannot acquire title through her, except by showing: (1) That she was authorized by the defendant to convey, thus making her conveyance his; or (2) that it is a purchaser in good faith and without notice, relying upon the deed from the defendant to her. The first suggestion is met by the clause in the deed which shows that the defendant never conveyed, or authorized to be conveyed, his fishing rights; and the second suggestion is answered by the fact that the plaintiff either had, or was chargeable with, notice of the defendant's rights.

[4] The recording act has no application to the case. That act is intended solely to protect a purchaser from an apparent owner against a previous deed or mortgage given by him which has not been recorded. The object of such statute is to require instruments to be recorded, and to make the record of them notice to subsequent parties dealing with the grantors. Raynor v. Wilson, 6 Hill, 469.

If the deed to the plaintiff had contained literally the same reservation, there could be no doubt about the case. But it contains it only by referring to former deeds for an accurate description of the premises, which were being conveyed by a description otherwise indefinite. Therefore I have stated that possibly the plaintiff might have shown that it had no actual knowledge of the contents of the original deeds making its title; but in the absence of such showing I think it must fairly be charged with knowledge of their contents, when they are so definitely referred to in its deed. In saying that it does not appear that the plaintiff did not know of the reservation in the deed, and that possibly evidence upon that point might have a bearing, the expression carries no suggestion as to the opinion of the court upon that subject, as it is not in the case and has not been considered.

The judgment should therefore be affirmed, with costs. All concur, HOUGHTON, J., in opinion, except SMITH, P. J., not voting.

HOUGHTON, J. (concurring). I think the judgment dismissing the plaintiff's complaint can be sustained only on the theory that the so-called reservation in the deed from defendant's mother to Carroll was in fact an exception and not a reservation. If the words used in the deed, "reserving the right to William H. Brown, Jr., to fish in said Millbrook stream," be regarded as a reservation merely, such

reservation would be void, because, in the first place, the right to fish is legally a part of the land itself, and not something issuing out of it, which is a necessary element of a reservation; and, in the second place, because, even though it be assumed that the defendant was not such a stranger to the deed as to make the reservation void, his acts in permitting his mother to convey as though she was the owner estopped him from asserting that he was not a stranger to the title and that he had some equitable interest in the property which justified a reservation in his behalf.

If the words be treated as a mere reservation, the plaintiff and its grantors had a right to say, from the record and from the language employed, that it was one in behalf of a stranger, and therefore inoperative and void, and hence one which they had the right to ignore, and concerning which they were under no obligation to make inquiry. But from the nature of the thing attempted to be reserved the law compelled the language to be read as an exception rather than a reservation. Millbrook stream was private water, and while the defendant's mother held title to land through which it ran she could have conveyed the right to take fish thereon separate and apart from any conveyance of the land, and when she conveyed the land itself she could except from such conveyance the right to take fish from such stream, thereby retaining in herself that portion of the land conveyed. Proprietors of the soil through which nonnavigable streams flow have the exclusive right of fishing therein, and the right to fish is an interest in the land itself and may pass by grant. Rockefeller v. Lamora, 85 App. Div. 254, 83 N. Y. Supp. 289. The right of fishery is not a mere easement in land. It is more than that, and is in the nature of an incorporeal right, and by strict classification is a profit à prendre like a right to take coal or ore, or cut grass or timber, without severance or ownership of the land itself, and is within the statute of frauds, and can be granted only by deed. Jones on Easements, §§ 57–60; Washburn's Easements and Servitudes (3d Ed.) 528–532.

The right to fish being, therefore, an interest in the land itself, and not something growing out of it and created by virtue of the conveyance, the language used in the deed from the defendant's mother to Carroll must necessarily be deemed to create, not a reservation, but an exception, and the plaintiff and its grantors were bound to so construe it. West Point Iron Co. v. Reymert, 45 N. Y. 703; Corning v. Troy Iron & Nail Factory, 40 N. Y. 191, 209. The plaintiff and its grantors must be assumed to have known that the right of fishery was an interest in land, and that it was not, strictly speaking, a subject of reservation, and that therefore it must be deemed, in order to give the words any effect whatever, an exception out of the premises granted. If, however, there was any doubt as to the intention of the parties that it should be an exception, rather than a reservation, they are presumed to know that extrinsic evidence was competent for the purpose of showing the intention of the parties in using the language employed. Bridger v. Pierson, 45 N. Y. 601.

It is true that the defendant's mother, prior to her conveyance to Carroll, had not granted the right to fish to the defendant, and that

the exception in the deed from her did not operate to vest title thereto in him; nor was it shown upon the trial that the mother had subsequently conveyed such title to him. The evidence does show, however, that she made the exception at his request, and that he asserted his right to fish thereunder, and it is fair to assume that he exercised that right under license from her and by her authority and consent. This right for him she excepted from her conveyance, and while the plaintiff has the right to prohibit all others from fishing in the stream, there was expressly withheld from it through the mesne conveyances from the mother the right to prevent the defendant from so doing while he was acting under her, and hence no injunction could issue against him.

It might be added that undoubtedly the mother has no power to convey the right to fish to any other person than the defendant, and that the defendant himself has no right to convey such privilege to others, but can only exercise it himself.

For these reasons, I concur in an affirmance of the judgment.